82 N.J. Super. 483 (1964)
198 A.2d 123
JEAN MARIE HICKMAN, AN INFANT, ET AL., PLAINTIFFS-APPELLANTS,
v.
MALLORY C. PACE AND ALICE PACE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 24, 1964.
Decided March 4, 1964.
*485 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Thomas T. Warshaw argued the cause for appellants (Mr. Louis M. Drazin, attorney; Mr. Warshaw, of counsel and on the brief).
Mr. Robert V. Carton argued the cause for respondents (Mr. Frank P. Zimmer, attorney; Mr. Jack F. Govan, of counsel and on the brief).
The opinion of the court was delivered by KILKENNY, J.A.D.
In this personal injury, automobile-pedestrian, negligence action, tried before a jury in the Monmouth County Court, there was a verdict in favor of defendants of no cause for action. Plaintiffs' motion for a new trial was denied. Plaintiffs appeal, contending: (1) the verdict was against the weight of the evidence, and (2) the trial court erroneously precluded plaintiffs' attorney, in his summation, from commenting upon the failure of the defendant driver to take the witness stand in her own behalf.
The trial record shows the following uncontradicted facts. On April 7, 1961, a clear, dry day, at about 11:35 A.M., the infant plaintiff Jean Marie Hickman, six years of age, was crossing on foot from the north side to the south side of Center Avenue in Atlantic Highlands, when an automobile owned *486 by defendant Mallory C. Pace and operated by defendant Alice Pace, in a westerly direction along Center Avenue, struck the infant plaintiff and caused the personal injuries for which she brought suit and in which her father William Hickman joined as a coplaintiff for his damages per quod.
In presenting their proofs to establish liability, plaintiffs did not call any eyewitness to the accident. Instead, they relied solely upon the testimony of the child's mother and that of the police chief of Atlantic Highlands, both of whom arrived upon the scene after the happening. Defendant driver was in court but neither side called her as a witness. Plaintiffs had not served interrogatories upon defendants and had not taken the deposition of the defendant driver.
The police chief, who arrived about ten minutes after the accident, testified that he saw defendants' station wagon at the scene and it was then near the curb at the left-hand side of the street. He also saw the infant plaintiff lying a few feet away from that curb and about five feet to the west and in front of the station wagon, with her head facing the street. He found skid marks, 31 feet in length, leading from a point in the roadway, where the defendant operator allegedly applied her brakes, to the point where her car came to a stop. The officer described Center Avenue, at the point of the accident, as being 30 feet wide and the area as residential in character, with St. Agnes Parochial School, about 350 feet away.
The police chief interviewed the defendant operator, Alice Pace, at the scene of the accident and she admitted that she was the driver of the car which had struck the infant plaintiff. The chief testified that she told him that she had been driving westerly along Center Avenue and, although she did not know exactly how fast she was going at the time, she felt that she was within the speed limit of 25 miles per hour. She also told him that she had observed a little girl standing at the curb on the left-hand side of the street, a friend of the infant plaintiff, and proceeded with care lest that other little girl might attempt to run out into the street. When she had driven her car a few feet farther, she noticed the infant plaintiff, who *487 "darted out from behind a car [parked on the north side of Center Avenue facing easterly] and attempted to run across the street. She immediately applied the brakes in an attempt to avoid the accident and made a left turn into the curb." Defendant driver further told the chief that she did not observe the infant plaintiff "until she ran out from behind the car." Obviously, the car from behind which the infant plaintiff darted out into the street was parked on the wrong side of the street.
Gloria Hickman, the mother of the infant plaintiff, testified that she arrived at the scene of the accident shortly after its occurrence and saw her daughter lying on the street and close to the southerly curb. The child was removed from the scene to Riverview Hospital. Mrs. Hickman stated that, on the following day, she saw defendant, Alice Pace, at the hospital and, in the conversation with her, defendant stated that she was sorry, "but she didn't see my daughter Jean because she had her eye on a little blonde-headed girl in the opposite side of the street. * * * She said she kept her eye on Janie [the little girl on the left side of the street] because she was afraid that she was going to run into the street." Mrs. Hickman also testified to the general character of the neighborhood, that she knew the defendant driver for a number of years prior to the accident, and that she had observed her on frequent occasions operating her motor vehicle in this neighborhood.
On the basis of the above testimony, the trial judge properly submitted to the jury the question of the negligence of the defendant driver. Whether or not the defendant had exercised reasonable care under the circumstances was a matter about which fair-minded men might honestly differ. The jury's verdict in favor of the defendants represents its finding that the defendant driver was not negligent. No question was raised at the trial as to the infant plaintiff's possible contributory negligence and the trial court did not include in its charge any instruction as to contributory negligence.

*488 I.
The verdict of the jury may not be set aside as against the weight of the evidence unless it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion. R.R. 4:61-1; Wytupek v. City of Camden, 25 N.J. 450, 466 (1957). We find no basis for holding in this case that the verdict was the result of mistake, partiality, passion or prejudice. We may not disturb the action of the trial court in granting or denying a motion for a new trial "unless it is clearly manifest that the action of the trial court was without basis in law or fact, or both, with the result that there was a denial of justice under the law." Hartpence v. Grouleff, 15 N.J. 545, 548 (1954); Rossetti v. Public Service Coord. Transport, 53 N.J. Super. 293, 297 (App. Div. 1958). The trial court's refusal herein to grant a new trial was not a denial of justice under the law. The limited scope of our appellate review in passing upon the propriety of the jury's verdict and the trial court's denial of a new trial has been clearly set forth in Kulbacki v. Sobchinsky, 38 N.J. 435, 446 (1962). We conclude that the verdict was not against the weight of the evidence and the trial court did not err in denying a new trial.

II.
We next consider plaintiffs' contention that the trial court erred in precluding their attorney from commenting on defendant's failure to testify. As noted above, the defendant driver was present in court during the trial and neither side elected to call her as a witness.
In his summation, defense counsel told the jury that "one of the things that is going to be raised immediately is why didn't the defendant take the stand." Plaintiffs' attorney immediately objected, the trial court excused the jury and, following argument as to the propriety of the comment, ruled that it was legitimate argument in summation for defendant's *489 attorney "to explain to the jury the reasons for her non-appearance under the facts and circumstances of this case." When the jury returned and summation by defense counsel was resumed, he made the following statement to the jury in the course of his remarks:
"Mrs. Pace's story in this case  and I was interrupted when I started to say why she did not take the stand  has been a matter of public record since ten minutes from the time this accident happened. There wasn't one blessed thing that she can add to what she told the policeman at the scene of the accident. Why should I expose her to the niceties of a trial like this? Her story is public. You can't change it."
When plaintiffs' attorney began his summation, he said at the outset:
"There was one person there besides this little girl, and that was Mrs. Pace, the defendant in this case. She was the only competent person who was present to come here and tell you what happened. During which time, under our Rules, I would be given an opportunity to cross-examine her ."
Defense counsel objected at this point, the jury was again excused, further argument was indulged in, and the trial court ruled that, under the circumstances of this case, plaintiffs' attorney might not comment upon the failure of the defendant, Mrs. Pace, to testify. O'Neil v. Bilotta, 18 N.J. Super. 82, 86 (App. Div. 1952), affirmed o.b. 10 N.J. 308 (1952), was cited as the basis for the ruling. The trial judge noted that the only testimony offered by plaintiffs consisted of the statements made by the defendant operator to the police chief and to the mother of the infant plaintiff.
We find no prejudicial error, under the circumstances of this case, in the trial court's refusal to allow plaintiffs' attorney to comment in his summation on the failure of defendant driver to testify. She had told her version of the accident to the police chief at the scene of the accident and had reiterated it to the mother, in unchanged substance, on the following day at the hospital. Her "repeating the testimony *490 would serve no useful purpose," and if plaintiffs desired that she be further interrogated, they were at liberty to question her. McMaster v. Henkel, 123 N.J. Eq. 184, 189 (E. & A. 1938). She had, presumably, nothing to add to or subtract from what she had already told the chief and mother. There was nothing to contradict. This was conceded and made clear to the jury by defense counsel in his summation. Comment by plaintiffs' attorney would have supplied nothing of material value to what the jury already knew.
Undoubtedly, plaintiffs' attorney entertained the hope that cross-examination of Mrs. Pace would have produced something in aid of his weak proofs. He said so at the hearing on the motion for a new trial. We are at a loss to understand why our liberal pretrial discovery proceedings were not utilized. Certainly, if admissions against defendants were developed through that medium, they could have been used against them at the trial. R.R. 4:16-4; R.R. 4:23-10. So, too, Mrs. Pace could have been called as a witness by plaintiffs and interrogated fully in the hope of eliciting testimony helpful to plaintiffs' cause. As an adverse party, plaintiffs would not have been bound by her testimony as in the case of a non-party witness. Becker v. Eisenstodt, 60 N.J. Super. 240, 248-249 (App. Div. 1960).
An inference adverse to a party because of his "unexplained" failure to produce a certain witness, when it would be "natural" for him to produce the witness, is generally permitted. Schultz v. Hinz, 20 N.J. Super. 346, 351 (App. Div. 1952). However, we have held that the adverse inference does not arise "when the person in question is equally available to both parties. Nor may the inference be drawn if the person's testimony is comparatively unimportant, or cumulative, or inferior to what is already utilized." O'Neil v. Bilotta, 18 N.J. Super. 82, 86 (App. Div. 1952). Accord: State v. Clawans, 38 N.J. 162, 171 (1962); 2 Wigmore, Evidence, (3d ed. 1940) §§ 286, 287. Her testimony would have been only cumulative and in no way "superior to that already utilized in respect to the fact to be proved." State v. Clawans, *491 supra, 38 N.J., at p. 171. Moreover, the failure to call her as a witness was not "unexplained." Accordingly, an adverse inference was not warranted under the special circumstances herein.
The only adverse inference which could have been fairly drawn from Mrs. Pace's failure to testify was that she could not truthfully deny the testimony presented against her. If defense counsel had not so conceded in his summation, then plaintiffs' attorney would have been entitled to comment to that extent in his closing statement to the jury. However, he would not have been justified in telling the jury what "cross-examination" of defendant might have elicited, as he was seemingly suggesting when he began his comment.
A statement by the trial judge, in explaining why plaintiffs' attorney was forbidden from commenting upon the failure of defendant to testify, requires some clarification in order to avoid a future misapplication of the rule in O'Neil v. Bilotta, supra. During colloquy with counsel and out of the presence of the jury, he said, inter alia:
"You are likewise bound by the fact that she [defendant] was available to you. She has been sitting in the court room and you could have called her. If the witness is available, or the party is available to both parties, there can be no comment in the failure to produce the party. You are bound by the same Rule of proving the testimony would be superior, and the other elements which I mentioned in the first instance * * *." (Italics ours)
The rule in O'Neil v. Bilotta was not so broadly stated. In that case, we were not concerned with the failure of a party to testify. The issue there was whether an adverse inference could be drawn from defendants' failure to take the depositions of or produce as witnesses at the trial three nonresident persons who had been passengers in defendants' automobile at the time of the accident. We held that no adverse inference could be drawn, because defendants had "sought the attendance of the witnesses; they refused to attend; and since they were out of the jurisdiction of the court, the defendant was without power to require their attendance." 18 N.J. Super., *492 at pp. 86-87. Thus, the factual pattern in O'Neil v. Bilotta was not one of "equal availability" of the witnesses to both parties, but rather their non-availability to defendants, who would naturally be expected to call them.
To hold that an adverse inference may never be drawn from a party's failure to testify, so long as he was physically present in court and could have been called as a witness by the adverse party, would, for all practical purposes, prevent the adverse inference from ever arising. Almost invariably, the party who chooses not to testify is present at the trial. When we speak of the witness "equally available to both parties," we contemplate the ordinary witness who would be as likely to be favorable to one party as the other. The equal availability is not to be determined from mere physical presence at trial. The fact that Mrs. Pace was in court and could have been called as a witness by plaintiffs does not ipso facto prevent an adverse inference arising from her failure to testify. The "availability" of a witness may well depend upon the "relationship [of the witness] to one or the other of the parties, and the nature of the testimony that he might be expected to give in the light of his previous statements or declarations about the facts of the case." Deaver v. St. Louis Pub. Service Co., 199 S.W.2d 83, 85 (Mo. Ct. App. 1947). See, too, United States v. Beekman, 155 F.2d 580 (2 Cir. 1946); McCormick on Evidence (1954), § 249, p. 534.
However, the trial court's ruling, preventing plaintiff's attorney from commenting on the failure of Mrs. Pace to testify, was not, under the circumstances herein, prejudicial error.
For the reasons above stated, the judgment is affirmed.