269 N.J. Super. 380 (1994)
635 A.2d 580
ERIC M. WITTER, AN INFANT BY HIS GUARDIAN AD LITEM, ROSE MARIE WITTER, AND ROSE MARIE WITTER, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
DIANE M. LEO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 1993.
Decided January 6, 1994.
*384 Before Judges BRODY, STERN and KEEFE.
Brian D. Drazin argued the cause for appellants (Drazin and Warshaw, attorneys; Mr. Drazin, of counsel; Pamela J. Collins Longhi, on the brief).
Frank E. Borowsky, Jr., argued the cause for respondent (Monte & Marriott, attorneys; Mr. Borowsky, on the brief).
The opinion of the court was delivered by BRODY, P.J.A.D.
This personal-injury action is based on the claim that defendant Diane Leo negligently failed to provide reasonable supervision for her 16-year-old son Jeffrey when she left him home alone. While defendant was gone for the day to take a sick friend to Connecticut for a visit, Jeffrey threw a beer party in the course of which one of his guests, plaintiff Rose Marie Witter's 16-year-old son Eric, severely injured himself. After drinking five cans of beer, he attempted to jump from a flat portion of the roof of defendant's house into her adjacent pool. He lost his footing on the roof and landed on a wooden deck that framed the pool.[1] Plaintiff sued both as Eric's guardian and individually. Defendant asserted the defense of comparative negligence against both Eric and plaintiff, the latter defense based on a claim that plaintiff negligently failed to supervise Eric by allowing him access to cans of beer that he brought to the party. The jury answered only the first of eleven *385 special interrogatories. By that answer it found that defendant was not negligent.
Plaintiff's main arguments are that the judge erred by (1) admitting into evidence Jeffrey's deposition testimony taken by plaintiff's attorney during discovery; (2) refusing to charge the jury that it could draw adverse inferences from defendant's failure to call Jeffrey as a trial witness; and (3) admitting into evidence defendant's testimony that a police officer had told her that Eric once possessed a device used by shoplifters to remove security tags from clothing. We agree with these contentions and order a new trial because the errors, at least when taken together, had the clear capacity to produce an unjust result.
In January 1987 defendant moved to the home where the accident occurred the following August. She was a single parent, having been divorced from Jeffrey's father for thirteen years.
Jeffrey and Eric were classmates and soon became friends. Defendant testified that she did not approve of Eric and had told him before the accident that he was "banned" from her property. She testified that her antipathy was the result of two incidents. On one occasion Eric and Jeffrey damaged a neighbor's screen when they unsuccessfully attempted to break into his house. The affair was more a prank than a criminal act. A mutual friend of the boys' was baby-sitting inside. They intended to scare the friend and then drink beer they thought was in the refrigerator. The parents of both boys paid the neighbor the cost of repairing the screen.
On the other occasion Jeffrey had lent defendant's unregistered and uninsured moped to Eric to ride home. Eric was later riding the moped with a girlfriend when they were stopped by police for unlawfully riding "double." When contacted by the police to pick up the moped, defendant told them to keep it. Some weeks later she went to the police station to sign over title to the moped. While there she was told by a police officer that when the police had stopped Eric they found a shoplifting device in his possession. The officer also told her that there had been several shoplifting *386 incidents at local stores. However, there was no evidence that Eric was ever charged with shoplifting or any other offense.

I.
Courts have been especially sensitive to the high risk of harm that is presented when alcoholic beverages are made available to minors. Where that risk is reasonably foreseeable, those responsible generally have a duty to take reasonable precautions. Thus, in Morella v. Machu, 235 N.J. Super. 604, 611, 563 A.2d 881 (App.Div. 1989), we held that parents had a duty
... to exercise reasonable care to arrange for competent supervision of their teenagers while they were out of state on vacation. If they failed to do so, and if that breach of duty was the reasonably foreseeable proximate cause of plaintiff's injuries, they must respond in damages.
There, the plaintiff was injured in an automobile accident with a careless minor who had become intoxicated at a party in the home of the teenage host's parents. Here, however, a minor guest injured himself, not others, after apparently becoming intoxicated at a party.
The duty is the same. Parents have a duty to provide for reasonable supervision of their minor child if it is reasonably foreseeable that, in their absence, the child will invite friends to a beer party at which one of the minor guests will become intoxicated and thereby injure himself. See Thompson v. Victor's Liquor Store, Inc., 216 N.J. Super. 202, 523 A.2d 269 (App.Div. 1987) (seller of alcoholic beverage to underage person may be liable for injuries to minor with whom purchaser shared beverage where, while intoxicated by beverage, minor injured himself by carelessly driving a car into a brick wall). See also Macleary v. Hines, 817 F.2d 1081 (3rd Cir.1987) (host of party where alcoholic beverages consumed may be liable for injuries to minor guest who, as result of becoming intoxicated there, carelessly entered a car being driven by visibly intoxicated person and was injured when driver drove the car into a tree).
*387 The foregoing legal framework of plaintiff's claim was not disputed at trial. Plaintiff's attorney in his summation stressed the undisputed fact that defendant had left Jeffrey home without any supervision and had done so on prior occasions:
No request of a neighbor to swing by, I have to go out of town and take a sick friend to Connecticut. And no request of the local police department, could you drive by once in a while when I'm at work or when I'm out of town or when I'm on a date or with my friends.
Defendant's attorney stressed that defendant could not reasonably have foreseen that her son would have a beer party or that plaintiff would injure himself trying to jump into the pool at such a party. Defendant testified that although she had never discussed the matter with Jeffrey before the accident, in her mind he was not allowed to have friends at the house unless she was there, or to permit friends to use the pool:
Q ... [H]ad you discussed with Jeffrey the propriety of bringing teenagers to your home?
* * * * * * * *
Relative to using the swimming pool, had you talked to Jeffrey about dos and do nots in bringing his teenagers over your house?
A No, I did not.
Q In your mind, Mrs. Leo, was [Jeffrey] allowed to bring his friends over to your house to use the swimming pool that first summer without bearing some ill response from you or some punishment?
A He was not allowed to bring friends over to my house unless I was there. And he was not allowed to have his friends use the swimming pool.
Q Unless you were there or period?
A Period.
Defendant explained that Jeffrey understood, without being told, that she alone was to use the pool because she swam in it as therapy for an injured leg. In his summation her attorney emphasized that defendant could not reasonably have foreseen that Eric would use the pool because she had expressly banned him from the property.

*388 II.
Plaintiff called as witnesses several of Jeffrey's friends who testified that because defendant frequently was not there, during her absences her home was often a gathering place of teenagers. They also testified that before the accident Jeffrey had hosted two major beer parties at the pool that summer and on the day of the accident there were cases of beer in the basement that Jeffrey and his guests hurriedly hid in nearby woods after the accident and before the police arrived. Plaintiff's attorney argued to the jury that not only should defendant generally have anticipated that her son would have beer parties on the property in her absence, but that she must have noticed remnants of the prior beer parties.
In his deposition, Jeffrey denied that beer was stored in defendant's house during the party, denied that there had been parties at the house before the day of the accident, and testified that the "one, two beers" that he had at the party were "someone else's." As to whether defendant permitted his friends to use the pool, Jeffrey testified:
Q Did your mom give you any instructions on what to tell people if they came over to use the pool, safety precautions, anything of that manner?
A No, not that I recall.
At times, Jeffrey's deposition testimony was contradictory and ambiguous. At other times he claimed to have forgotten facts that the jury might have considered important. His deposition testimony invited searching cross-examination at trial.
Jeffrey was 20 years old in July 1992 when the case was tried. Although he had just visited with defendant in New Jersey over the Fourth of July weekend, the weekend before trial, that summer he was living with his father in Connecticut where he had a summer job. Except for the summer recess, he was a student at the University of West Virginia. The trial court admitted Jeffrey's deposition into evidence after finding that defendant had not "procured" his absence from New Jersey.
*389 The court initially based its ruling on the definition of "unavailable as a witness" in former Evid.R. 62(6), then in effect, which provided:
As used in Rules 63 through 66, ...
(6) "Unavailable as a witness" means that (a) the witness is dead, or (b) the witness is beyond the jurisdiction of the court's process to compel appearance, or (c) the witness is unable to testify because of then existing physical or mental disability, or (d) the proponent of the statement is unable, despite due diligence, to procure the attendance of the witness. A witness is not unavailable when the condition was brought about by the procurement, wrongdoing or culpable neglect of the party offering his statement, or when his deposition can be taken by the exercise of reasonable diligence and without undue hardship, and the probable importance of the testimony is such as to justify the expense of taking such deposition.
The court found that Jeffrey was unavailable because he was "beyond the jurisdiction of the court's process to compel appearance" and his unavailability was not "brought about by the procurement, wrongdoing or culpable neglect of the party offering his statement."
We need not explore whether Jeffrey was "unavailable" under the former Rule because that definition applied only when the hearsay statement of an "unavailable" declarant was admissible as an exception to the rule against hearsay. The former Rules of Evidence did not provide such an exception for the deposition of a declarant taken in the same action. Evid.R. 63(3) provided in relevant part:
Subject to Rule 64 and to the same limitations and objections as though the declarant were testifying in person, and where the declarant is unavailable as a witness, testimony is admissible if (a) it was given by the declarant as a witness in a prior trial of the action or in another action or in a deposition taken in compliance with law for use as testimony in the trial of another action....
The admissibility of a discovery deposition taken in the same action was controlled by the Rules of Court. R. 4:16-1(c) then and now provides in relevant part:
Except as otherwise provided by R. 4:14-9(e) [videotaped depositions], the deposition of a witness, whether or not a party, may be used by any party for any purpose, against any other party who was present or represented at the taking of the deposition or who had reasonable notice thereof if the court finds that the appearance of the witness cannot be obtained because he ... is out of this state *390 ..., provided, however, that the absence of the witness was not procured or caused by the offering party....
There is no question that Jeffrey was "out of this state" at the time of trial. The issue is whether his absence was "procured or caused by" defendant.
The facts on the point were not fully developed by evidence at trial. However, defendant's attorney acknowledged that he controlled whether Jeffrey would appear as a trial witness. When the court asked him why he was offering Jeffrey's deposition rather than his live testimony, the attorney replied:
Oh, by my election, Judge. I, for reasons which are personal to me in terms of trial technique and strategy, I have made the judgment that this is in the best interest of my client, to offer the evidence in this format.
The court would not permit plaintiff's attorney to ask defendant, "Have you talked to [Jeffrey] about whether he's available to come home?"
Defendant contends that neither she nor her attorney "procured or caused" Jeffrey to be "out of this state" during trial because Jeffrey did not live here and so his absence was natural. We do not read the Rule so narrowly. It makes no reference to where the declarant lives; its concern is with why the declarant "is out of this state" at the time of trial.
Mindful of the Rule's clear preference for live testimony at trial, we see no difference between deliberately suppressing a declarant's testimony by asking the declarant to leave this state or by declining to ask the declarant to come into this state. If a party controls whether the declarant will be in this state to testify and elects not to call him as a witness, that party has at least "caused" if not "procured" the declarant's absence under the Rule. The trial court should have sustained plaintiff's objection to the admission of Jeffrey's deposition.
We note that the result would not be different under the new Rules of Evidence. Unlike Evid.R. 63(3), N.J.R.E. 804(b)(1) recognizes that, under certain circumstances, the deposition of an unavailable witness taken in the same action may be admissible as *391 an exception to the rule against hearsay. However, the definition of "unavailable" under the new Rule requires that the party offering the deposition first demonstrate that there are no "reasonable means to procure the declarant's attendance at trial." N.J.R.E. 804(a)(4). Rule 4:16-1(c) is in harmony with N.J.R.E. 804(a)(4).

III.
Unavailability is a factor in determining both whether to admit a nonparty witness's deposition testimony and whether to charge a jury that it may draw an adverse inference against a party who does not call a witness that the party reasonably might have been expected to call. In the former situation, the party offering the hearsay evidence must demonstrate that the witness is unavailable. In the latter situation, the party seeking to avoid the adverse-inference charge similarly must demonstrate that the witness is unavailable. State v. Clawans, 38 N.J. 162, 170-71, 183 A.2d 77 (1962). Although the functions they perform are different, the definitions of "unavailable" should be the same in both situations. It would be anomalous for a court to admit the deposition of an absent witness after finding that the witness is unavailable, yet charge the jury that it may draw an adverse inference because of the same witness's absence after finding, under a different definition of "unavailable," that the witness is not unavailable.
The trial court recognized the need for comparable treatment. Therefore, having found Jeffrey unavailable as a reason for admitting his deposition testimony, it found him unavailable as the reason for not giving an adverse-inference charge. Now that we have concluded that Jeffrey, being within defendant's power to produce, was available and therefore his deposition testimony was inadmissible, we also conclude that because he was available for that purpose he was available for the purpose of giving an adverse-inference charge. Besides, Clawans defines "availability" *392 in terms of whether the witness "was within the power of the party to produce." Id. 38 N.J. at 171, 183 A.2d 77.
The other Clawans factors warrant giving an adverse-inference charge. Jeffrey's testimony would "elucidate the facts in issue." Id. at 170, 183 A.2d 77. His testimony "would have been superior to that already utilized in respect to the fact[s] to be proved." Id. at 171, 183 A.2d 77. He is not "a person who by his position would be likely to be so prejudiced against the party that the latter could not be expected to obtain the unbiased truth from him, or a person whose testimony would be cumulative, unimportant or inferior to what had been already utilized." Ibid. The trial court should have given the adverse-inference charge.

IV.
The last issue we need discuss is the admissibility of a police officer's double hearsay statement, recounted by defendant in her testimony, that when stopped by police while riding the moped, Eric possessed a device used by shoplifters to remove security tags from clothing. The court received the evidence for the limited purpose of enhancing defendant's credibility respecting her claim that she had told Eric that he was banned from her property. Credibility became a factual issue on this point when Eric testified that defendant had never told him that he was banned from her property. Defendant's attorney argued that the jury would more likely believe that she had told Eric of a ban if she had that reason for issuing it.
The admissibility of this evidence was first raised before opening statements. At that time, the trial court prohibited defendant's attorney from referring to the police officer's double hearsay statement because it was not admissible. The court also ruled that the prejudicial effect of the statement far outweighed its probative value. Evid.R. 4. At the time, the court did not realize that Eric would deny that defendant had told him before the accident that he was banned from her property. After Eric *393 testified that he was not banned, the court reversed its holding and permitted him to be cross-examined on the point.
When defendant later testified, however, she acknowledged knowing that after her alleged ban and before the accident she had reason to believe that Eric continued to come to her home when she was away. Indeed, on one occasion she found him there when she came home. Knowing that Eric had ignored her alleged ban neutralized defendant's claim that because of the ban she had no reason to foresee that Eric would be on her property at the time of the accident. Once the ban lost its relevance, the prejudicial evidence of the shoplifting tool, admitted to prove the ban, should not have been admitted.

V.
These errors require a new trial because they were clearly capable of producing an unjust result. R. 2:10-2. The jury was presented with difficult factual and sensitive judgmental issues as to what defendant had reason to foresee when she left Jeffrey home alone and what she reasonably should have been expected to do to prevent plaintiff's injury. The jury's consideration of these issues clearly could have been unfairly affected by the truncated version it had of what Jeffrey knew and by the gratuitous, unsubstantiated and irrelevant double hearsay evidence that Eric was a thief.

VI.
We address one more issue that may recur should there be a new trial. The trial court instructed the jury, at defendant's request and over plaintiff's objection, that even if defendant had banned Eric from the property he could recover on the alternate theory that by maintaining the pool on her property defendant was subject to the lower standard of care due Eric as a trespasser. Plaintiff never advanced such a theory  probably because she knew that if she could not recover on a negligence theory, she would not recover on a theory under which defendant *394 was charged with the lower standard of care due a trespasser. The result was a confusing jury charge. Where there is no prejudice to a defendant, a judge may charge a correct theory of recovery not advanced in the complaint. Farese v. McGarry, 237 N.J. Super. 385, 390-91, 568 A.2d 89 (App.Div. 1989). However, a judge may not force upon a plaintiff an alternate theory of recovery that the plaintiff chooses to forgo.
Reversed and remanded for a new trial.
NOTES
[1] At the beginning of the party, before drinking the five beers, Eric, an accomplished athlete, had successfully jumped off the roof into the pool three times.