286 N.J. Super. 419 (1996)
669 A.2d 822
ANTOINETTE NISIVOCCIA, AN INDIVIDUAL AND LAWRENCE NISIVOCCIA, HER HUSBAND, PER QUOD, PLAINTIFFS-RESPONDENTS,
v.
ADEMHILL ASSOCIATES, A BUSINESS ENTITY, AND JACKSON CROSS COMPANY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1995.
Decided January 5, 1996.
*421 Before Judges PETRELLA and P.G. LEVY.
John F. O'Donnell argued the cause for appellant (O'Toole and Couch, attorneys; William L. O'Reilly, on the brief).
Neil A. Malvone argued the cause for respondent (Lombardi & Lombardi, attorneys; Mr. Malvone, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
This appeal deals with the application of the procedures in State v. Clawans, 38 N.J. 162, 183 A.2d 77 (1962), in a civil case, as they pertain to summation comments by one party about the failure of an adversary to produce a witness at trial, and where there is no request for an adverse inference charge.
Plaintiffs moved for a new trial after a jury had no-caused their negligence action by assessing comparative negligence of 57% against plaintiff Antoinette Nisivoccia.[1] They based their motion upon the failure of defendants' attorney to obtain a Clawans charge before he commented upon plaintiffs' nonproduction of a certain witness. Holding that the comments had prejudiced the jury's verdict and thereby caused a miscarriage of justice, the trial *422 court granted plaintiffs' motion, from which defendants now appeal. We reverse.
A jury trial, lasting less than two days, established that around 9:30 a.m. on the rainy morning of May 10, 1990, Nisivoccia left her home to shop with her friend, Jane Komoviski.[2] The two women went first to drop off a form for plaintiff's son at a second floor office in a building owned by Ademhill Associates (Ademhill) and managed by Jackson Cross Company[3] at 5001 Hadley Road in South Plainfield. Upon arriving, they found no one in that office. Nisivoccia then followed Komoviski down the stairs to leave when she slipped and fell, fracturing a small bone in her left foot.
At trial, Nisivoccia described her accident as follows:
All of a sudden I felt my foot sliding, caught onto the rug, and I went sliding, and I hit that metal stripping there, but my girlfriend already had the door open.... She broke my fall, and I fell.
After her fall, Nisivoccia testified that she and her friend had again walked up to the second floor to try to find someone to whom they could report her accident.
Vigorously contesting the issue of liability, defendants' attorney brought out various inconsistencies in Nisivoccia's testimony. For example, plaintiff insisted at trial that she did not have an umbrella with her on the day in question, although she professed her uncertainty on the point at her deposition. Nisivoccia later asserted that the mat upon which she had allegedly tripped was not embedded into the floor, and had slid with her when she fell, despite the fact that an indentation had been cut into the floor to hold the mat in place. She also denied having entered the building with an investigator to take photographs of the scene for trial, only to contradict that statement by admitting that she did *423 show him where the accident had occurred. In addition, Nisivoccia testified that she had driven her friend to Komoviski's home after the fall, yet in her deposition she said that her friend had walked home from plaintiff's house.
In his summation, Ademhill's attorney indicated that he did not call any witnesses because the only one present at the accident who could be brought in as a witness was Komoviski. Nisivoccia had asserted on cross-examination, however, that her friend, who she had asked to testify, and who was interviewed for that purpose, had not witnessed her fall because she was facing the other way. The defense attorney primarily relied upon his cross-examination of Nisivoccia and her safety expert in arguing that they lacked credibility and that plaintiff had negligently caused herself to fall. Defendants' attorney questioned Nisivoccia's credibility by comparing her deposition testimony that Komoviski had walked home, with her trial testimony that despite her injured condition, she had driven Komoviski home. The attorney remarked:
They walk out get in the car. She drives. I said, you drive? She said, oh, that doesn't look good. I drove. And I drove Jane home, too. And then I go home. I don't go to a hospital or anything. I'm even driving the car. And, oh, Jane doesn't drive. You mean, Jane  well, I don't think Jane drives. Where's Jane, ladies and gentlemen? Where is she? (Emphasis supplied).
Towards the close of the defense attorney's summation, he again focused the jury's attention on Komoviski's absence at trial:
They got the burden of proof. What have they shown here? They've shown we've complied with the standard relied upon by their own expert. That's what they've shown. They've come up here with a story that is whatever I think the jury might want to hear. The girlfriend who's with her, she's not here to testify about [it]. She doesn't drive. I'll bet. (Emphasis supplied).
Plaintiffs' attorney did not object to any of the statements in defendants' summation. Instead, he initially responded during his closing summation to his adversary's comments by explaining that Komoviski was not called because she had not witnessed the accident. He said:
She's with her friend Jane. As they're walking out, the fall occurs. What about Jane? Plaintiff from this box told you Jane had her back to her when the fall occurred. Jane didn't witness the accident. Jane did not witness the accident. *424 She was holding the door open. She had her back to her. That was plaintiff's own words. [If] Jane saw it, don't you know I would have had her in here immediately to testify? But she didn't. She had her back to her when the fall occurred.
The jury returned its verdict finding plaintiff 57% negligent and defendant 43% negligent. Thereafter, plaintiffs moved for a new trial based upon the allegedly prejudicial effect on the jury's verdict of defense counsel's summation comments about the nonproduction of plaintiff's girlfriend as a witness.
At oral argument on plaintiffs' motion, their attorney acknowledged that his reference to the fact that Komoviski had not witnessed the accident was a "curative measure." He insisted that his adversary's comments had nevertheless created an inference in the jury's mind that her failure to appear was calculated to prevent his adversary from impeaching her credibility. He blamed his failure to make a timely objection on the fact that he was intensely focused on what he characterized as outrageous comments by the defense attorney. The defense attorney answered that he had never intended to ask for an adverse inference charge, and that his comments were directed solely at plaintiff's credibility.
Rejecting the defense attorney's assertion that plaintiffs' attorney would not have called Komoviski even if he had been given notice, the trial judge emphasized that "[w]e will never know that because that is why you are supposed to tell them before they rest so that they do have an opportunity to call the witness that you intend to bring in." The judge continued:
[m]aybe the jury chose not to believe her [Komoviski] because they wondered what the witness would have said or why the witness wasn't called and that is why you have to give your adversary an opportunity before they rest to call that witness you intend to comment about.
A trial judge may vacate a jury verdict only if it results from misunderstanding, bias or prejudice. Roman v. Mitchell, 82 N.J. 336, 347, 413 A.2d 322 (1980). Inasmuch as plaintiffs' motion for a new trial expressed their first objection to the defense attorney's summation remarks, we will consider the present appeal under the plain error standard. See R. 2:10-2. The issue in *425 this appeal, therefore, is whether the comments of defendants' attorney in summation constituted plain error because they had the capacity to prejudice the jury so as to cause a miscarriage of justice. We hold that they did not.
In resolving this issue, we consider the ramifications for civil trials of State v. Clawans, supra, 38 N.J. 162, 183 A.2d 77. In Clawans, the defendant was an attorney who had represented a suspect arrested for allegedly supplying narcotics to a third party who testified against her client at the suspect's preliminary hearing. At the hearing, the witness recanted her signed, sworn statement to the police that implicated the suspect. Attorney Clawans was later indicted for subornation of false swearing.
The recanting witness testified at Clawans' criminal trial that the attorney had approached her on three separate occasions to persuade her to change her story. Two detectives also testified in the State's case, however, the State did not call either a prisoner or a prison matron, both of whom had observed the conversations between the recanting witness and Clawans. The Court was of the view that the prison matron's proximity afforded her the best opportunity to overhear the discussion.
On Clawans' appeal, she argued that the trial judge had erred in refusing her request to instruct the jury that it could draw a negative inference favorable to her cause from the State's failure to call those two witnesses. Although vastly narrowing the charge requested by Clawans, the Supreme Court agreed, reasoning that the
failure of a party to produce before a trial tribunal proof which, it appears, would serve to elucidate the facts in issue, raises a natural inference that the party so failing fears exposure of those facts would be unfavorable to him.
[Id. at 170, 183 A.2d 77].
The Court said that the principles governing the nonproduction of a witness applied to both criminal and civil trials. Id. at 171, 183 A.2d 77; see Model Jury Charges [Civil] § 1.18 (1995) (acknowledging applicability of the Clawans charge in civil cases by providing guidelines and cautions for its use).
*426 The Court also indicated, however, that certain conditions must exist before an inference may be drawn, subject to an explanation sufficient to demonstrate a more plausible reason for the nonproduction of the witness. Id. at 170-171, 183 A.2d 77. Specifically, the Court required that the witness must be "within the power of the party to produce" and that the proffered testimony must be "superior to that already utilized in respect to the fact to be proved." Id. at 171, 183 A.2d 77.
Clawans observed that application of these concepts "is particularly perplexing and difficult where a litigant requests a charge to that effect." Id. at 172, 183 A.2d 77. The Clawans Court appreciated that normally such requests come without warning at the conclusion of the entire case, and that the allegedly defaulting party has no opportunity to justify or to explain his failure to call the non-produced witness. Ibid. Given these circumstances, the Court announced procedures for deciding adverse inference charge requests:

It is conceivable that the factual situation involved in the litigation and the relationship of the parties to the witnesses, are such that the trial judge may properly reach a conclusion as to whether an inference could arise without the necessity of proof in explanation and therefore without prior warning of the intention to request a charge. The better practice, however, is for the party seeking to obtain a charge encompassing such an inference to advise the trial judge and counsel out of the presence of the jury, at the close of his opponent's case, of his intent to so request and demonstrating the names or classes of available persons not called and the reasons for the conclusion that they have superior knowledge of the facts. This would accord the party accused of nonproduction the opportunity of either calling the designated witness or demonstrating to the court by argument or proof the reason for the failure to call. Depending upon the particular circumstances thus disclosed, the trial court may determine that the failure to call the witness raises no inference, or an unfavorable one, and hence whether any reference in the summation or a charge is warranted. [Ibid. (emphasis supplied)].
In Hickman v. Pace, 82 N.J. Super. 483, 489-490, 198 A.2d 123 (App.Div. 1964), we affirmed the preclusion of a plaintiff's attorney's comment in summation regarding the failure of a defendant to testify about the events of an automobile accident. After the trial judge had allowed defense counsel to explain to the jury that his client had nothing to add to the facts adduced at trial, the *427 plaintiffs' attorney began his summation by commenting that he would have been given an opportunity to cross-examine the defendant if she had testified. Id. at 488-489, 198 A.2d 123. We agreed with the trial judge that the attorney's attempt to suggest an adverse inference concerning the failure to testify was inappropriate because the defendant's testimony was cumulative and inferior to that already presented from other witnesses. Id. at 490-491, 198 A.2d 123. While recognizing that this worked to deny the inference sought, we did not consider whether such comments first required the attorney to request an adverse inference charge. See id. at 490, 198 A.2d 123.
On the other hand, in Wild v. Roman, 91 N.J. Super. 410, 418-419, 220 A.2d 711 (App.Div. 1966), we reversed a no-cause verdict because the trial judge gave a pretrial Clawans charge when none was warranted. The judge had erred because he neither forewarned the plaintiffs of his intention to charge an adverse inference nor gave them an opportunity to be heard on its propriety.
In Witter by Witter v. Leo, 269 N.J. Super. 380, 384, 635 A.2d 580 (App.Div. 1994), we applied the Clawans factors in determining that the trial judge had erred in refusing a requested adverse inference jury instruction regarding defendant's failure to produce her son to testify. Because the son had superior knowledge of the events concerning the alleged negligence, we ordered a new trial on the ground that the error was clearly capable of producing an unjust result. Id. at 393, 635 A.2d 580 (citing R. 2:10-2). Neither Wild nor Witter by Witter, however, resolve the issue now before us.
In the criminal context, Justice Clifford confirmed that the Clawans criteria apply to statements made during summation that implicate an adverse inference. See State v. Irving, 114 N.J. 427, 442, 555 A.2d 575 (1989). He wrote that parties should generally refrain from summation comments about any negative inference until they have requested such an inference from the trial judge, who "`only after all the particulars are disclosed ... may properly determine whether the inference should be urged in summation.'" *428 Ibid. (quoting State v. Carter, 91 N.J. 86, 128, 449 A.2d 1280 (1982)). Nevertheless, despite the prosecutor's noncompliance with Clawans procedures before commenting upon the defendant's nonproduction of the only witness who could have corroborated his alibi, the Court in Irving found no reversible error.
Likewise, an alleged procedural error by a prosecutor who failed to follow the Clawans procedures prior to mentioning two non-produced witnesses during summation was held to be harmless error in State v. Wilson, 128 N.J. 233, 244-245, 607 A.2d 1289 (1992), where the defendant had relied upon the witnesses and their testimony could have corroborated his alibi.
For purposes of determining whether to permit comment upon the nonproduction of an alibi witness, we reviewed the Clawans procedure in State v. Hickman, 204 N.J. Super. 409, 499 A.2d 231 (App.Div. 1985), and held that Clawans imposed upon a trial court the responsibility to determine on the record:
(1) that the uncalled witness is peculiarly within the control or power of only the one party, or that there is a special relationship between the party and the witness or the party has superior knowledge of the identity of the witness or of the testimony the witness might be expected to give; (2) that the witness is available to that party both practically and physically; (3) that the testimony of the uncalled witness will elucidate relevant and critical facts in issue[;] and (4) that such testimony appears to be superior to that already utilized in respect to the fact to be proven.
[Id. at 414, 499 A.2d 231].
Hickman had insisted that he was with his girlfriend, and later had a conversation with a long-time friend in front of witnesses when the robbery with which he was charged had occurred. Defense counsel mentioned the long-time friend as an alibi witness during summation. The prosecutor asked in his summation, "why aren't they [the other witnesses] here testifying today." Id. at 413, 499 A.2d 231. In deciding the comments were not prejudicial, we considered that the relationship between the witness and the defendant and "`that the anticipated testimony of the uncalled witnesses will elucidate the transaction'" both favored permitting the summation comment. Id. at 414, 499 A.2d 231.
*429 In the present controversy, defendants' attorney never requested an adverse inference charge and did not expressly argue in his summation that the jury should draw an adverse inference. Contending that he had no intention of seeking an adverse inference charge, defense counsel pointed out that plaintiff's friend had not testified at trial. The issue is whether he was required to seek such a charge or court approval of his comments before being permitted to comment on Komoviski's nonappearance at the trial. We hold that defendants' attorney was not required to seek an adverse inference charge or permission from the court before commenting on Komoviski's absence. We agree that "the better practice," in accordance with Clawans and Wild, suggests that an attorney who seeks to comment upon the nonproduction of a witness advise the trial judge and opposing counsel of his intention before summation. This will alert the judge to a potential inference issue and provide a final opportunity to the opposing party either to seek to reopen its case or to present an explanation in a form of rebuttal. Nevertheless, neither Clawans nor its progeny mandate that defendants' attorney have done so here.
As our cases illustrate, the failure to adhere to the Clawans procedure does not necessarily control the grant or denial of a new trial. State v. Irving and State v. Wilson equally demonstrate that, notwithstanding the failure to fully comply with the Clawans procedure, comment upon the nonproduction of a witness may amount to harmless error in a criminal case. See also Murin v. Frapaul Construction Co., 240 N.J. Super. 600, 612-613, 573 A.2d 989 (App.Div. 1990) (failure to adhere to Clawans procedure deemed harmless error where plaintiffs' attorney commented during summation that defense attorney had right to have plaintiff examined by doctor of his own choice).
Aside from the harmless impact on the jury of defendants' noncompliance with Clawans, we regard the judge's remarks as sheer speculation. We also note that there are practical problems with the pre-notification procedure suggested by the judge. In civil trials, one party is not obligated to help the other party's *430 case. To the extent the judge was of the view that it is the obligation of a defense attorney before the plaintiff rests in a civil case to give notice to an adversary of an intent to comment upon the failure to call a witness, the judge was mistaken. Our cases do not so hold. See State v. Irving, supra, 114 N.J. at 443-444, 555 A.2d 575 (considering obligation imposed by Clawans to refrain from comments upon nonproduction of a witness until requesting adverse inference charge to be "a matter of professional conduct" rather than a "requirement"); Clawans, supra, 38 N.J. at 172, 183 A.2d 77 (characterizing as "the better practice," but not mandating, the notification of court and adversary at close of opponent's case of an intention to seek adverse inference charge).
All attorneys in civil cases are charged with knowledge that an adversary may focus on the failure to call a witness. Indeed, to countenance such an approach would in effect require attorneys at the beginning of a trial to serve notice on their adversaries that if a person listed as a witness is not called, or perhaps some evidence is not produced that was referred to in the opening statements, an adverse inference charge would be requested or the attorney would seek to comment upon that fact in summation, or both.
In any event, we are further persuaded that in applying Clawans a distinction must be recognized between a criminal case and a civil case so that attorneys may generally make appropriate comments in civil case summation without prior notification of the adversary. In State v. Irving and State v. Wilson, the State, as the party with the burden of proof, was the last party to address the jury. Hence, without notice of an intention to comment in summation, the criminal defendants would have had no opportunity to rebut those comments. Conversely, the plaintiffs in the present case had the last word and thus had the opportunity to address the defense attorney's comments about their failure to produce Komoviski as a corroborative witness. Whereas a defendant in a civil suit could be disadvantaged by a plaintiff's summation comment unless defense counsel anticipates and addresses the *431 issue first, the reverse is much less likely to be the case. We are, therefore, persuaded that the remarks by defendants' attorney during summation did not prejudice the jury against plaintiffs due to any absence of an authorized Clawans charge or pre-approved summation comment.
Moreover, the comments here could hardly be considered prejudicial. The Clawans criteria would indicate that defendants might have been able to argue that they should have been entitled to an adverse inference charge under the reasoning used in criminal trials. Indeed, plaintiff's attorney, an experienced trial attorney, had to have realized from his adversary's cross-examination of his client that the failure to call Komoviski might be an unanswered question in the jury's mind, except perhaps for plaintiff's own testimony that her friend did not see the fall.
Our review of the record, guided by the plain error standard, persuades us that the defense attorney's comments were reasonably based upon the trial testimony and were not capable of producing an unjust result. See R. 2:10-2. There was sufficient evidence to support the jury's verdict. The claimed error, even if it were error, was not capable of causing the jury to arrive at a result that it would not otherwise have reached. Plaintiff's case could not be described as a strong one. Cf. Wild v. Roman, supra, 91 N.J. Super. at 418, 220 A.2d 711 (unauthorized adverse inferences improperly prejudiced jury verdict where plaintiff presented a "strong case of malpractice").
The trial judge's decision to set aside the jury's verdict and grant a new trial, based upon the defense attorney's comments about a witness not being produced, thus caused a miscarriage of justice. See Dolson v. Anastasia, 55 N.J. 2, 7, 258 A.2d 706 (1969); R. 4:49-1. Although an appellate court should defer to decisions predicated upon the trial judge's "feel of the case," Caldwell v. Haynes, 136 N.J. 422, 432, 643 A.2d 564 (1994) (quoting Dolson, supra, 55 N.J. at 6, 258 A.2d 706), we may render our own determination based upon factors "transmitted by the written word," Mahon v. Reilly's Radio Cabs, Inc., 212 *432 N.J. Super. 28, 37, 513 A.2d 367 (App.Div. 1986) (quoting Dolson, supra, 55 N.J. at 6-7, 258 A.2d 706).
The trial judge's decision here is not entitled to deference because it involved "tangible considerations," "apparent from the face of the record," which this court may equally adjudicate. Caldwell v. Haynes, supra, 136 N.J. at 432, 643 A.2d 564 (quoting Dolson, supra, 55 N.J. at 7, 258 A.2d 706. Given the traditional presumption of correctness accorded to jury verdicts, Baxter v. Fairmont Food Co., 74 N.J. 588, 598, 379 A.2d 225 (1977), the motion granting a new trial cannot stand absent a showing that the verdict was so contrary to the evidence presented as to indicate prejudice toward respondents. Kassick v. Milwaukee Elec. Tool Corp., 120 N.J. 130, 134, 576 A.2d 270 (1990).
The jury in this case had sufficient basis to render its verdict as it did. No grounds exist to disturb that verdict. See McDonald v. Mianecki, 159 N.J. Super. 1, 25, 386 A.2d 1325 (App.Div. 1978), aff'd, 79 N.J. 275, 398 A.2d 1283 (1979). The record demonstrates neither "clear error [n]or mistake" by the jury in reaching its determination. See Carrino v. Novotny, 78 N.J. 355, 360, 396 A.2d 561 (1979).
We reverse and remand to the Law Division with direction to reinstate the jury verdict.
NOTES
[1] Reference to the plaintiff or Nisivoccia in the singular is to plaintiff Antoinette Nisivoccia. Plaintiff Lawrence Nisivoccia asserted a per quod claim.
[2] We need not detail all of the facts developed as to the issues of liability and damages in view of the somewhat narrow issue involved.
[3] Defense counsel explained to the judge that, despite a receivership by Ademhill, he represented both defendants for purposes of the trial. Thus, for simplicity we refer merely to Ademhill.