**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0773-22

MARCIA RICHMOND,
KENDELL BENNETT,
and ARNOLD KENNETH
RICHMOND II,

      Plaintiffs-Respondents,

v.

SOFIA MARTIANOU,

      Defendant-Appellant.

_____

      Submitted December 12, 2023 – Decided January 3, 2024

      Before Judges Whipple, Mayer and Enright.

      On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. DC-002982-22.

      Kristina Bergsten (Animal Law Firm), attorney for appellant.

      Nehmad Davis & Goldstein, attorneys for respondents (Michael Carmine Donio, on the brief).

PER CURIAM

Defendant Sofia Martianou appeals from an October 5, 2022 order granting possession of a dog to plaintiffs Marcia Richmond, Kendell Bennett, and Arnold Kenneth Richmond II.[1]  We affirm.

We recite the facts from the evidence presented to the judge during a hearing.  Bennett and Arnold are siblings.  Marcia is their eighty-two-year-old mother.

On September 12, 2020, Arnold and Marcia, who lived together, purchased an English bulldog from a dog breeder.  Arnold provided a $500 down payment, and Marcia supplied the remaining $3,200 to purchase the dog, which they named Kano.  According to Arnold, Marcia gifted him the money to purchase Kano.  Arnold became Kano's primary caretaker as of September 2020.

On November 8, 2020, Marcia executed a document granting her daughter, Bennett, a power of attorney.  The power of attorney authorized Bennett to manage Marcia's personal property, act on Marcia's behalf in all legal matters, and perform all acts necessary to care for Marcia's pets.[2]

---

[1] Because Marcia Richmond and Arnold Kenneth Richmond II share the same last name, we refer to them by their first names.  No disrespect is intended.

[2]  Under this power of attorney, the judge recognized Bennett as a plaintiff in the replevin action.

On October 25, 2021, Arnold began serving a six-month jail sentence. Arnold arranged for his thirty-one-year-old son to care for Marcia and Kano until Arnold's release from jail.

In January 2022, Bennett noticed Marcia and Kano were "not being taken care of properly." As a result, Bennett took Marcia to live with her. Bennett looked for someone to "foster" Kano until Arnold's release from jail.

On February 16, 2022, Bennett and Martianou[3] executed a written contract, drafted by Martianou, providing Martianou would care for Kano until April 23 or 30, 2022, in exchange for $500 per month, plus expenses. At the hearing, Bennett and Martianou testified the contract provided Martianou would care for Kano until the end of April 2022, when it was anticipated Arnold would return home.

On February 18, 2022, Bennett delivered Kano to Martianou. Martianou claimed Kano was dirty, underweight, and showed other signs of improper care when he arrived at her home. As a result of his condition, Martianou took Kano to the veterinarian.

Marcia expressed a desire to visit Kano. On March 26, 2022, Martianou arranged for Kano to visit with Marcia, Bennett, and Bennett's husband at a local

---

[3] Bennett and Martianou were co-workers.

park. Martianou's boyfriend accompanied Martianou to the park for the visit. According to Martianou and her boyfriend, when the visit ended, Marcia accompanied Martianou to her car. Martianou testified neither Bennett nor Bennett's husband were present when Marcia walked to Martianou's car. Martianou claimed Marcia stated she could keep Kano, and the two women hugged and cried.

According to Bennett's husband, Marcia never was out of his earshot. He further testified the two women did not hug. He also stated there was nothing about the visit "that led [him] to believe Kano was being given to [Martianou]."

That same evening, Bennett sent a text to Martianou thanking her for arranging the visit between Marcia and Kano. Martianou replied:

> Aww, you're welcome! It was so nice seeing you and your husband again, and your mother is lovely. Such a pleasure meeting her. Please tell her thank you again for the beautiful candle and I'm sorry we didn't get to talk more. I've never seen him act like that, [sic] he usually listens to me. He loves the ice cream cone, thank you!

Nothing in Martianou's response asserted Marcia had gifted Kano to her.

On April 22, 2022, Arnold was released from jail. On April 24, 2022, Bennett sent text messages to Martianou to "make arrangements to come and get Kano" and asking Martianou to allow Kano "to stay a few more days" until

4

A-0773-22

Arnold was "ready to get[ ] Kano back." Martianou did not reply to Bennett's text messages.

On April 29, 2022, Bennett sent Martianou another text message, advising Arnold would "come and get [Kano] tomorrow" and requesting a specific time to retrieve the dog. Later that day, Martianou replied "Kano is mine," and told Bennett "[d]o what you feel you need to."

On August 8, 2022, plaintiffs filed a replevin action and order to show cause seeking the immediate return of Kano. Martianou filed an answer, counterclaim, and affidavit in response to the order to show cause. On August 25 and September 16, 2022, the judge conducted a hearing on plaintiffs' replevin action.

At the hearing, Arnold identified himself as Kano's owner and Marcia as Kano's "co-owner." Bennett similarly testified Arnold and Marcia jointly owned Kano. Arnold and Bennett did not call Marcia as a witness.

During the hearing, plaintiffs introduced three exhibits: a July 7, 2020 Venmo receipt evidencing a $500 down payment to the dog breeder for a bulldog puppy; a September 12, 2020 receipt memorializing Arnold's purchase of a bulldog puppy; and registration papers identifying a "chocolate/white olde english bulldogge" born July 10, 2020. Despite Martianou objecting to the July

A-0773-22

7, 2020 receipt as inadmissible hearsay, the judge admitted the document as evidence. The judge admitted the other two documents proffered by plaintiffs because Martianou did not object.

On September 16, 2022, the judge placed her findings of fact and conclusions of law on the record. The judge found Arnold and Marcia purchased Kano on September 12, 2020. She further determined Kano "was essentially a family dog titled in the name of Arnold." The judge found Martianou cared for Kano under a written foster agreement until Arnold's release from prison around April 23 or April 30, 2022.

While the judge found the parties' visit with Kano at a park on March 26, 2022 was undisputed, she noted the following:

> What is disputed is whether Marcia told [Martianou] that she could keep the dog . . . [.] [T]he party that wants to prove a gift bears the burden to prove that gift. . . . That proof . . . should be by clear . . . , cogent, and persuasive proofs. . . . Here, the proofs are . . . in equipoise, or they're equal[,] [a]nd so [Martianou] has not proven . . . that Marcia gave [Kano as] a gift to her.

Because Martianou failed to establish the elements necessary to prove a valid and irrevocable gift or that Maria had the legal right to gift Kano, the judge concluded "plaintiff[s] . . . have the right to [possess] the dog."

6

On October 5, 2022, the judge entered an order awarding possession of Kano to plaintiffs.[4] The order provided a writ of replevin would issue in the event Martianou failed to return Kano by October 12.

On October 11, Martianou moved for a stay pending appeal. On October 24, plaintiffs cross-moved for a writ of replevin. On November 17, the judge denied stay relief and issued a writ of replevin for Kano's immediate return to plaintiffs.

On appeal, Martianou raises several arguments. First, she claims the judge failed to determine whether any of the plaintiffs had a right to possession of Kano superior to her possessory right to Kano. Moreover, Martianou argues an adverse inference was warranted because plaintiffs failed to present testimony from Marcia. She also asserts the judge erred in admitting hearsay evidence related to the purchasing and gifting of Kano. We reject these arguments.

We apply a deferential standard in reviewing a judge's factual findings. Balducci v. Cige, 240 N.J. 574, 594-95 (2020). We "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254

---

[4] For reasons that are unclear in the record, a different judge entered the October 5, 2022 order.

A-0773-22

(2015).  We will decline to "'disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'"  Ibid. (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

"A person seeking recovery of goods wrongly held by another may bring an action for replevin in the Superior Court."  N.J.S.A. 2B:50-1.  Pets are a form of personal property and, therefore, may properly be the subject of a replevin action.  See Houseman v. Dare, 405 N.J. Super. 538, 544-46 (App. Div. 2009).

A party may obtain a court order for possession in a replevin action under N.J.S.A. 2B:50-1 to -5 and Rules 4:61-1 to -5.  To prevail in a replevin action, the party seeking the goods bears the burden of demonstrating ownership of the property and the right to exclusive possession.  Kleinfeld v. General Auto Sales Co., 118 N.J.L. 67, 71 (E. & A. 1937).

We first consider Martianou's argument that the judge erred in granting possession of Kano to plaintiffs.  Martianou contends Arnold and Marcia failed to present sufficient evidence for the judge to find plaintiffs owned Kano.

Having reviewed the record, we are satisfied the judge properly awarded possession of Kano to plaintiffs.  Arnold testified without contradiction that he

purchased Kano and cared for the dog for more than a year.  See Pippin v. Fink, 350 N.J. Super. 270, 273-74 (App. Div. 2002) (considering the person who purchased and cared for a dog when determining the dog's owner).  Arnold provided unrebutted testimony that Marcia contributed additional funds for him to purchase Kano and, therefore, Marcia co-owned the dog with Arnold.  Bennett substantiated Arnold's testimony in this regard.  Thus, there was sufficient credible evidence in the record, unrefuted by Martianou, supporting the judge's finding that Kano was the family dog and plaintiffs demonstrated they possessed the lawful right to the dog.

We next consider Martianou's argument the judge's admission of the three documents at the hearing constituted reversible error.  She argues these documents were not authenticated and were inadmissible hearsay.

We review a judge's evidentiary ruling for abuse of discretion.  Rowe v. Bell & Gossett Co., 239 N.J. 531, 551 (2019).  A trial court abuses its discretion when "a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

A-0773-22

Because Martianou objected to the July 7, 2020 receipt, we review its admission for harmless error. Under that standard, we may reverse if we find "a reasonable doubt as to whether [the error] led the [court] to a verdict it otherwise might not have reached." Willner v. Vertical Reality, Inc., 235 N.J. 65, 79 (2018) (first alteration in original) (quoting State v. Lazo, 209 N.J. 9, 26 (2012)).

However, Martianou did not object to the September 12, 2020 receipt and registration papers and, thus, we review the admission of those documents for plain error. R. 2:10-2. Under this standard, we will reverse a trial court's decision only if an error was "clearly capable of producing an unjust result." Campo v. Tama, 133 N.J. 123, 132 (1993).

The three documents were inadmissible hearsay. However, the admission of the documents neither led to a verdict the judge may not have otherwise reached nor were "clearly capable of producing an unjust result."

Here, Arnold proffered undisputed testimony regarding his purchase of Kano using his own funds and money gifted to him by Marcia. Accordingly, the admission of the July 7, 2020 receipt was harmless error and the admission of Kano's registration papers and September 12, 2020 receipt was not "clearly capable of producing an unjust result." Because this was a non-jury proceeding, we are satisfied the judge accorded the proper weight to Arnold's unrefuted

10

testimony regarding ownership of Kano and did not rely solely on the three documents erroneously admitted during the hearing.

We next address Martianou's argument the judge erred in declining to find she had an ownership interest in Kano because Marcia gifted the dog to her on March 26, 2022. Martianou asserts the judge failed to make findings of fact and conclusions of law regarding her "ownership interest" in Kano. We disagree.

"To demonstrate a valid and irrevocable gift, a donee must establish four elements": (1) the donor actually or symbolically delivers the gift; (2) the donor intends to give the gift; (3) the donee accepts the gift; and (4) the donor relinquishes ownership and control of the gift. Sipko v. Koger, Inc., 214 N.J. 364, 376 (2013). The donee must prove these elements by "clear, cogent and persuasive" evidence. Ibid. (quoting Farris v. Farris Eng'g Corp., 7 N.J. 487, 501 (1951)).

Martianou and Bennett's husband provided conflicting testimony regarding the events that occurred at the park on March 26, 2022. The judge made credibility determinations, to which we must defer, and found the testimony of Martianou and Bennett's husband was in equipoise. Because the judge concluded the evidence regarding the purported gifting of Kano to Martianou was equal, the judge found Martianou failed to satisfy her burden of

11

proving ownership of Kano with "clear, cogent and persuasive proofs." Additionally, the judge was "persuaded" Martianou had no ownership interest in Kano based on her failure to mention Marcia gifting the dog to her in any text messages. Moreover, the judge determined it was unclear that Marcia had the legal authority to gift Kano because Arnold held title to the dog. With these fact-findings, we discern no basis to disturb the judge's conclusion that Martianou failed to prove any ownership interest in Kano.

We next address Martianou's claim that Marcia's failure to testify warranted an adverse inference that Marcia gifted Kano to her. Martianou never raised this issue during the hearing despite having ample opportunity to do so. Thus, we review the argument for plain error.

We review a judge's decision regarding the request for an adverse inference for abuse of discretion. See Bldg. Materials Corp. of Am. v. Allstate Ins. Co., 424 N.J. Super. 448, 472 (App. Div. 2012). "An adverse inference charge may be appropriate if 'a party fails to call a witness' whose testimony 'would have been superior' to that presented and who 'was within the power of the party to produce.'" ASHI-GTO Assocs. v. Irvington Pediatrics, P.A., 414 N.J. Super. 351, 361 (App. Div. 2010) (quoting Witter by Witter v. Leo, 269 N.J. Super. 380, 391-92 (App. Div. 1994)).

12

However, an adverse inference "is not invariably available whenever a party does not call a witness who has knowledge of relevant facts." State v. Hill, 199 N.J. 545, 561 (2009). Instead, the party seeking an adverse inference must show:

> (1) that the uncalled witness is peculiarly within the control or power of [the adverse] party, or that there is a special relationship between [that] party and the witness[,] or [that] party has superior knowledge of the identity of the witness or of the testimony the witness might be expected to give; (2) that the witness is available to that party both practically and physically; (3) that the testimony of the uncalled witness will elucidate relevant and critical facts in issue[;] and (4) that such testimony appears to be superior to that already utilized in respect to the fact to be proven.
>
> [Torres v. Pabon, 225 N.J. 167, 182 (2016) (quoting Hill, 199 N.J. at 561-62).]

If the requesting party "could have secured [the witness's] trial testimony by service of a notice in lieu of subpoena on his counsel, pursuant to Rule 1:9-1, by court order, or by consent," the first factor is not satisfied. Id. at 183.

Here, Marcia could have been subpoenaed and Martianou could have secured Marcia's testimony by serving a notice in lieu of subpoena upon Marcia's attorney. Thus, Martianou would have been unable to meet her burden for an adverse inference even if she made such a request during the hearing.

13

Additionally, the decision to draw an adverse inference is left to the discretion of the trial judge. <u>State, Dep't of Law & Pub. Safety, Div. of Gaming Enf't v.</u> Merlino, 216 N.J. Super, 579, 587 (App. Div. 1987). Here, the judge heard testimony from several witnesses related to Kano's ownership. Thus, we are satisfied the judge did not abuse her discretion in declining to draw an adverse inference because Marcia was not called to testify during the plenary hearing.

To the extent we have not addressed any of Martianou's remaining arguments, those arguments are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION